UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY L. FRAYER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:17-cv-2437-EFB<br><br><br>MEMORANDUM AND ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act ("the Act"). The parties have filed cross-motions for summary judgment. ECF Nos. 19 & 20. For the reasons discussed below, plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted.

I.     BACKGROUND

Plaintiff filed an application for SSI on March 4, 2014. Administrative Record ("AR") at 179-183. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 92, 107. On June 7, 2016, a hearing was held before administrative law judge ("ALJ") G. Ross Wheatley. *Id.* at 33-77.

/////

/////

1

On July 27, 2016, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id*. at 16-25. The ALJ made the following specific findings:

1. The claimant has not engaged in Substantial Gainful Activity (SGA) since March 4, 2014, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: Scoliosis by history, Endometriosis, Anxiety, Seizure Disorder, Amnestic Disorder, Borderline Intellectual Functioning (BIF), and asthma (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Par 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

\* \* \*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

4. After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to lifting-carrying 20 pounds occasionally and 10 pounds frequently; is limited to sitting six hours and standing-walking six hours in an eight-hour workday, with normal breaks; needs a sit-stand option provided the claimant is not off task more than 10% of the time; is limited to frequent stooping/bending; must avoid concentrated exposure to fumes, odors, dusts, gasses, and poorly ventilated areas; must avoid concentrated exposure to hazardous machinery and unprotected heights; is limited to simply, routine, repetitive tasks; is limited to occasional changes in the work settings; and is limited to occasional interact[ion] with the general public, coworkers, and supervisors.

\* \* \*

5. The claimant is unable to perform any Past Relevant Work (PRW) (20 CFR 416.965).

\* \* \*

6. The claimant was born [in] 1974 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and Residual Functional Capacity (RFC), there are jobs that exist in significant numbers in the National Economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

\* \* \*

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 4, 2014, the date the application was filed (20 CFR 416.920(g)).

AR at 18-24.

Plaintiff's request for Appeals Council review was denied on September 25, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-4.

II. <u>LEGAL STANDARDS</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

3

*Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff raises two arguments. First, she argues that the ALJ failed to incorporate all of the limitations assessed by examining psychiatrist, James A. Wakefield, Jr. into his RFC determination and in his questioning of the vocational expert ("VE"). Second, plaintiff argues that the ALJ relied on "facially and fundamentally inaccurate" VE testimony in determining the number of jobs available to her at Step Five.[2] Neither is persuasive.

A. Incorporation of Limitations

Plaintiff notes that Dr. Wakefield determined that her intellectual ability fell within the "borderline range" due to her IQ score of 73. AR at 362. Wakefield also determined that her verbal comprehension scored a 70 and that her "processing speed" scored a 62 percent – both well below the average range of 90-110. *Id.* at 363. Wakefield determined that, in light of the foregoing scores, plaintiff's work pace would be "slow." *Id.* at 364. Plaintiff now contends that,

---

[2] In her brief, plaintiff reverses the order of these arguments. The court addresses the limitations argument first, however, because it stems from the ALJ's RFC determination, which is made before step four of the sequential evaluation.

4

despite giving great weight to Wakefield's opinions, the ALJ failed to incorporate the findings of slow pace and deficient memory/concentration into his RFC. ECF No. 19 at 12.

The court finds this argument unpersuasive. In spite of the cognitive limitations identified by plaintiff, Wakefield still determined that plaintiff could "follow simple repetitive tasks and some more complex procedures . . . ." AR at 364. The ALJ incorporated this finding in his RFC by limiting plaintiff to "simple, routine, [and] repetitive tasks . . . ." *Id.* at 21. And, as the Ninth Circuit found in *Stubbs-Danielson v. Astrue*, limitations to simple work are sufficient to account for moderate limitations. 539 F.3d 1169, 1174-1176 (9th Cir. 2008). Plaintiff, relying on *Brink v. Comm'r of S.S.A.*, 343 F. App'x 211, 212 (9th Cir. 2009), argues that *Stubbs-Danielson* does not apply in cases where medical evidence establishes that a plaintiff has restrictions in concentration, persistence, or pace. ECF No. 19 at 12-13. But *Brinks*, as an unpublished decision, is not controlling authority.[3] *See* 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of the Court are not precedent."). And Ninth Circuit decisions following *Brinks* have seemed to confirm its status as an outlier. *See*, *e.g.*, *Mitchell v. Colvin*, 642 F. App'x 731, 733 (9th Cir. 2016) (unpublished) (citing *Stubbs-Danielson* with approval for the proposition that a limitation to "simple, repetitive tasks" adequately accounted for moderate limitations in concentration, persistence, and pace); *Stommes v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00071-PHX-DLR, 2018 U.S. Dist. LEXIS 52739, 2018 WL 1531706, *2-*3 (D. Ariz. March 29, 2018) (noting that *Stubbs-Danielson*, as a published decision, holds more weight than *Brink* and that "*Brink* seems to be an outlier even among unpublished decisions."). Finally, two other non-

---

[3] In relevant part:

> In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), we held that an 'assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony.' *Id.* at 1174. The medical testimony in Stubbs-Danielson, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. Stubbs-Danielson, therefore, is inapposite.

*Brinks*, 343 F. App'x at 212.

examining psychiatrists reviewed Wakefield's opinion and concluded that plaintiff had no more than moderate difficulties in maintaining concentration, persistence, pace, and social functioning. AR at 85, 99. Thus, the court does not accept plaintiff's lay contention that her limitations are more than moderate.

Based on the foregoing, the court also rejects plaintiff's contention that the ALJ's hypotheticals to the VE were inadequate in failing to include Wakefield's limitations. The ALJ included in his hypothetical a limitation to simple, routine, or repetitive tasks which would involve only occasional changes in work setting and interactions with others. AR at 70-71.

B.  Availability of Jobs

Plaintiff argues that, at the step 5 determination as to the number of jobs available to her, the ALJ erred in accepting VE testimony that is "facially and fundamentally inaccurate." ECF No. 19 at 7. Specifically, she contends that the VE's determination that 200,000 (nationally) positions exist for "Inspector" (Dictionary of Occupational Titles ("DOT") 559.687-074) and 100,000 (nationally) positions exist for "Mail Sorter" (DOT 209.687-026) are based on a faulty interpretation of employment statistics. *Id.* at 8. Plaintiff notes that, at the oral hearing, the VE testified that the job numbers she identified were based on statistics from the Department of Labor, Bureau of Labor Statistics ("BLS") which, in turn, were divided in DOT classifications. AR at 75. She claims that this testimony was inaccurate insofar as the BLS compiles data according to the Standard Occupational Classification System ("SOC") and not by DOT code. ECF No. 19 at 8.

Plaintiff then undertakes her own analysis of BLS data and notes that a single SOC code is an aggregation of multiple DOT job listings. *Id.* at 9. For instance, the "Inspector" position is found within the larger SOC category of "Inspectors, Testers, Sorter, Samplers, and Weighers" found at SOC 51-9061. It necessarily follows, plaintiff argues, that if the VE based her numbers on SOC codes, she swept in more than just "Inspector" positions.

Plaintiff's argument has a *prima facie* appeal, but the court cannot accept it. The methodology the VE employed in generating her numbers is unclear. It is true, as the plaintiff states, that the VE testified that "[the BLS] derive[s] [job data] from national and regional sources

6

going to SOC classifications, then it's divided into DOT classifications." AR at 75. But this testimony was not issued in response to a question about the VE's methodology, rather it was made in response to the question as to how the BLS "get[s] the information to classify . . . particular jobs?" *Id.* When asked how she generated her available job numbers, the VE stated only that she looked to information compiled by the BLS. *Id.* And it is unclear what she meant by this. One might intuit, as plaintiff does, that the BLS numbers were the beginning and the end of the VE's calculation. Were this the only possible interpretation, the court would credit plaintiff's argument.[4] Another possible conclusion, however, is that the VE used the BLS data in conjunction with her "labor market experience" (AR at 76) to arrive at a number – 250,000 in the case of "Inspector"[5] – that is not clearly reflected in the BLS statistics alone.[6]

Absent other expert testimony – which plaintiff has not produced into the record – the court can do little more than guess at the underlying foundation for how the VE might have arrived at her calculations. This uncertainty fatally undercuts plaintiff's argument insofar as a VE's information is presumed – absent clear indication to the contrary – to be reliable. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no

---

[4] Plaintiff includes a hyperlink to the BLS website which shows national estimates for the occupation of "Inspectors, Testers, Sorters, Samplers, and Weighers." She notes that the website indicates that there are 20,950 jobs (nationally) for Inspectors, Testers, Sorters, Samplers, and Weighers in plastic product manufacturing, which would encompass the job the VE testified plaintiff could do. *See* https://www.bls.gov/oes/2016/may/oes519061.htm. Plaintiff focuses on plastics because the DOT classification for the Inspector position cited by the VE is specific to that industry. *See* Dictionary of Occupational Titles 559.687-074, Inspector and Hand Packager (plastic prod.). But she has not shown that the Inspector position identified by the VE would be limited to only the 20,950 jobs in the "plastic product manufacturing" industry identified in SOC 51-9061.

[5] Plaintiff raises the same argument with respect to the VE's finding that 100,000 "Mail Sorter" jobs existed in the national economy. The analysis in this section is equally applicable to plaintiff's contentions regarding that VE finding.

[6] The court notes that, if plaintiff's interpretation were accepted, it would still be unclear how the VE arrived at 250,000 available Inspector jobs. A review of the figures on the BLS website cited by plaintiff finds no match or clean derivation for the 250,000 number.

7

additional foundation is required.") (internal citation omitted); *Wright v. Berryhill*, 692 F. App'x 496, 497 (9th Cir. 2017) (unpublished) ("Absent a persuasive challenge to the ALJ's reliance on the VE's proffered job numbers, [claimant] cannot establish that the ALJ's acceptance of the VE's testimony constituted reversible error."). Other courts have found that lay interpretation of raw job numbers – like plaintiff offers here – is insufficient to undercut a VE's analysis. *See Cardone v. Colvin*, 2014 U.S. Dist. LEXIS 55929, *15-17 (C.D. Cal. Apr. 18, 2014) ("[P]laintiff's lay assessment of the raw vocational data derived . . . does not undermine the reliability of the VE's opinion."); *Kremlingson v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 214535, *11-12 (E.D. Cal. Dec. 20, 2018) (rejecting challenge to VE's job number where plaintiff failed to bolster her own interpretation of evidence with any expert analysis or declaration).

Based on the foregoing ambiguity, the court finds that the ALJ appropriately exercised his discretion in relying on the VE's testimony. An ALJ's determination must be upheld "where the evidence is susceptible to more than one rational interpretation . . . ." *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED; and

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: March 14, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE